**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTHONY L. RICHARDSON, | ) | |
| | ) | Civil Action No. 12 – 87 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| LOUIS FOLINO, *et al.*, | ) | |
| | ) | ECF Nos. 31, 35 |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Anthony L. Richardson ("Plaintiff") is a state prisoner currently incarcerated at the State Correctional Institution at Fayette ("SCI-Fayette").  The events forming the basis for this action occurred while he was an inmate at the State Correctional Institution at Greene ("SCI-Greene") in 2009 and 2010.  Defendants are employees of the Pennsylvania Department of Corrections and medical providers at SCI-Greene.[1]  Plaintiff initiated this action on January 23, 2012.[2]  (ECF No. 1.)  His Complaint was docketed on January 26, 2012 (ECF No. 4), and he filed an Amended Complaint on April 24, 2012 (ECF No. 15).   Defendants have filed Motions to Dismiss

---

[1]     Defendants include Superintendent Louis Folino; Captain Paul Walker; Lieutenant S.P. Durco; Lieutenant Armstrong; Officer Rocky King; Commissary staff member Conklin; Dr. Parks; Dr. Jin; Nurse McElroy; and Chief Grievance Officer Dorina Varner.

[2]     This is the filing date under the "mailbox rule."  Pennsylvania and federal courts employ the prisoner mailbox rule.  *See* <u>Perry v. Diguglielmo</u>, 169 Fed. Appx. 134, 136 n.3 (3d Cir. 2006) (citing <u>Commonwealth v. Little</u>, 716 A.2d 1287 (Pa. Super. Ct. 1998)); <u>Burns v. Morton</u>, 134 F.3d 109, 113 (3d Cir. 1998).  Under this doctrine, a prisoner's *pro se* pleading is deemed filed when delivered to prison officials for mailing.  *See* <u>Burns</u>, 134 F.3d at 113; <u>Commonwealth v. Castro</u>, 766 A.2d 1283, 1287 (Pa. Super. Ct. 2001) (deemed filed when given to proper prison authority or placed in a prison mailbox).

Plaintiff's Amended Complaint (ECF Nos. 31, 35), and upon careful consideration of the submissions of both parties, Defendants' motions will be granted for the reasons that follow.

## I.   Plaintiff's Allegations

Plaintiff alleges that he has several disabilities, including diabetes, genitourinary issues, and hearing impairment, and that he has suffered injuries to his left hip, back, and knees which confine him to a walker.  (Amended Complaint, ECF No. 15 at ¶ 3.)  He brings this action pursuant to 42 U.S.C. § 1983, seeking redress for violations of his Eighth and Fourteenth Amendment rights under the United States Constitution, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act.  He is also seeking redress for Pennsylvania state law violations of Article I of the Pennsylvania Constitution and medical malpractice.  Id. at ¶¶ 1, 78-81.

Plaintiff has divided his Amended Complaint into four "Fact" sections.  In Fact 1, Plaintiff alleges that, on February 18, 2009, he fell in the dining hall due to unsafe conditions.  Id. at ¶ 16.  He was transported to the medical department in a wheelchair where he claims he was given "no examination, assessment, or relief alternatives" for his pain.  Id. at ¶ 18.  He was instructed to fill out a sick call slip and return to his cell, which he did.  Id. at ¶¶ 18-19.  Plaintiff was examined by Dr. Parks the following day, fourteen hours after the incident.  Id. at ¶ 19.  He claims that Dr. Parks failed to provide any kind of meaningful medical care.  Id.  However, he admits that he was prescribed a pain reliever on February 19, 2009, but did not receive it until February 25, 2009.  Id. at ¶¶ 19-20.  He also admits that a nurse gave him a cane on February 20, 2009, and that he received x-rays for his injuries on March 2, 2009.  Id. at ¶¶ 19, 22.  Plaintiff claims that two other inmates were injured in identical circumstances in the same dining hall.  Id. at ¶ 28.  Plaintiff filed a grievance regarding the delay and lack of proper medical care as well as

the unsafe conditions in the dining hall which led to his fall, but it was denied through all three levels of review.  Id. at ¶¶ 21, 23-30.

In Fact 2, Plaintiff alleges that, on January 25, 2010, he fell in the commissary after tripping over an inmate's foot due to overcrowding.  Id. at ¶ 33.  An officer delayed in coming to his aid but Ms. Conklin, a commissary staff member, gave him water.  Id. at ¶ 40.  He was subsequently transported by wheelchair to the medical department.  Id. at ¶ 41.  He claims that the Physician's Assistant did not give him any pain medication because he was already on pain medication from the previous accident in the dining hall, but he was given a tube of analgesic cream for his knee.  Id. at ¶ 43.  He claims that he was bound to a wheelchair for several months as a result of his fall.  Id. at ¶ 41.  He grieved the incident, but his grievance was denied by Lt. Armstrong.  Id. at ¶¶ 42-45.  His appeal was denied by Superintendent Folino, and his final appeal was denied by Chief Grievance Officer Varner.  Id. at ¶¶ 46-48.

In Fact 3, Plaintiff alleges that, on April 4, 2010, he was "catapulted" out of his wheelchair after hitting a pothole and landed on the ground.  Id. at ¶ 52.  He claims that Officer King witnessed the incident but walked away, in an attempt to avoid it.  Id. at ¶¶ 53-54.  He returned to his housing unit, informed his block officer of the incident, and requested that he call the medical department.  Id. at ¶ 55.  Medical instructed Plaintiff to sign up for sick call and told him that he would be examined when the nurse came to collect the sick call slips that day.  Id. The nurse came but left without examining him.  Id.  However, he was advised to report to the medical department later that day.  Id. at ¶ 56.  He claims that he was held overnight in a medical cell but not given any pain medication.  Id.  He was seen by Dr. Parks the following day but claims that Dr. Parks released him back to his housing unit without conducting an examination. Id. at ¶ 57.  Plaintiff filed a grievance over this particular incident in regards to hazardous

conditions at SCI-Greene, Officer King's refusal to come to his aid, and deprivation of medical treatment by the nurse who came to collect the sick call slips.  <u>Id</u>. at ¶ 58.  His grievance was denied through all three levels of review.  <u>Id</u>. at ¶¶ 58-59.  Plaintiff claims that the pothole, which caused his accident, had been there for years and was allowed to worsen.  <u>Id</u>. at ¶ 58.  He further claims that several other inmates and one staff member were injured by the same pothole and that caution cones were later placed around the pothole and other problematic areas on the premises of SCI-Greene.  <u>Id</u>.

In Fact 4, Plaintiff alleges that he fell in his cell on May 5, 2010, after he rose from his bed to receive his insulin shot from Nurse McElroy.  <u>Id</u>. at ¶ 62.  He asserts that his fall would have likely been prevented had he not been previously stripped of his wheelchair, cane, and plastic chair.  <u>Id</u>. at ¶ 65.  He claims that both Nurse McElroy and the escorting officer laughed and walked away without assisting him after administering the insulin shot.  <u>Id</u>. at ¶¶ 63-64.  He was assessed by a Physician's Assistant the following day.  <u>Id</u>. at ¶ 67.  He filed a grievance, which was denied by Lt. Durco.  <u>Id</u>. at ¶¶ 66-69.  Plaintiff's appeal and final appeal were also denied.  <u>Id</u>. at ¶¶ 69-70.

## II.  Legal Standard

Defendants have filed Motions to Dismiss Plaintiff's Amended Complaint.  A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint.  <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993).  A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)); <u>Ashcroft v. Iqbal</u>, 129 S. Ct.1937, 1949 (May 18, 2009) (citing <u>Twombly</u>, 550 U.S. at

555-57).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).   The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57).

In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in Phillips v. County of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008) (construing Twombly in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of Twombly and Iqbal as follows:

> After Iqbal, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.  To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. See Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n. 3.

Fowler, 578 F.3d at 210.

Thereafter, in light of Iqbal, the United States Court of Appeals for the Third Circuit in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), set forth the following two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-11.

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)). A court may also consider indisputably authentic documents. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Golden v. Cook, 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publically available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### III. Discussion

Defendants move to dismiss Plaintiff's Amended Complaint on numerous grounds. Because there are certain grounds which are dispositive as to the each named Defendant, the Court will not address every basis for dismissal asserted. For purposes of this Memorandum Opinion, Defendants Folino, Walker, Durco, Armstrong, King, McElroy, Varner, and Conklin will be referred to as "the Corrections Defendants" and Defendants Dr. Jin and Dr. Parks will be referred to as "the Medical Defendants."

### A.      *Res judicata*

At the outset, the Corrections Defendants seek to have Plaintiff's Amended Complaint dismissed pursuant to the doctrine of *res judicata*, noting that the claims raised in this case either

have or could have been fully litigated in a case Plaintiff filed in the Court of Common Pleas of

Greene County on or about December 10, 2010, and which was dismissed on July 15, 2011

(hereinafter referred to as "the Greene County case").  With respect to this issue, the Corrections

Defendants have submitted several exhibits in connection with Plaintiff's Greene County case,

Case No. AD 1382.  *See* Exhibits in Support of Motion to Dismiss, ECF Nos. 36-1 – 36-6.[3]  In

his Greene County case, Plaintiff sued ten individuals, including Corrections Defendants Folino,

Walker, Durco, King, McElroy, and Conklin, alleging retaliation, due process and equal

protection violations based on the same exact events at issue in the instant matter.[4]  *See* ECF 36-

2.  The state court found that Plaintiff had failed to state a claim upon which relief could be

granted and dismissed the case on July 15, 2011.  *See* ECF No. 36-4.  Plaintiff appealed and the

Pennsylvania Commonwealth Court dismissed the appeal for Plaintiff's failure to comply with

an order of the court.  *See* ECF No. 36-6.

### 1.  Applicable Law

The Full Faith and Credit Clause[5] of the United States Constitution requires the courts of

one State to give preclusive effect to the judgments rendered by the courts of another State.

Riley v. New York Trust Co., 315 U.S. 343, 348-49 (1942).  "A final judgment in one State, if

---

[3]        The Court will consider these documents because they are matters of public record.  *See* Pension Benefit
Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss,
courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and
matters of public record.")

[4]        The only significant difference in the instant case is that Plaintiff has included additional Defendants
(Armstrong, Varner, Dr. Parks, and Dr. Jin) and asserted additional claims (violations of the Eighth and Fourteenth
Amendments to the United States Constitution; violations of Title II of the Americans with Disabilities Act, codified
as 42 U.S.C. §§ 12131 *et seq*.; violations of Section 504 of the Rehabilitation Act, codified as 29 U.S.C. § 701;
violations of Article 1 of the Pennsylvania Constitution; and medical malpractice).  However, the underlying facts
and events giving rise to the claims are identical.

[5]        "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of
every other State.  And the Congress may by general Laws prescribe the Manner in which such Acts, Records and
Proceedings shall be proved, and the Effect thereof."  U.S. CONST., Art. IV, § 1.

rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land" and "gains nationwide force." Baker v. General Motors Corp., 522 U.S. 222, 233 (1998).   Federal courts are not *constitutionally* required to give preclusive effect to the judgments issued by state tribunals. Kremer v. Chemical Construction Corp., 456 U.S. 461, 483 n.24 (1982) (remarking that federal courts are "not included within the constitutional provision").   However, when a judgment is rendered by a state court, federal courts are *statutorily* required to accord that judgment preclusive effect under 28 U.S.C. § 1738.  The applicable statutory language provides that "[t]he Acts of legislature of any State, Territory, or Possession of the United States . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."   28 U.S.C. § 1738.   "This statute has long been understood to encompass the doctrines of *res judicata*, or 'claim preclusion,' and collateral estoppel, or 'issue preclusion.'"   San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323, 336 (2005).  A federal court must give a judgment issued by a state court the same preclusive effect that it would be accorded in the courts of the relevant state.  Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523 (1986).

When federal courts are called upon to give preclusive effect to prior state court judgments, the governing law in such cases is the state law of preclusion from the state of the prior state court judgment.   *See* 28 U.S.C. § 1738 (full faith and credit statute); Marrese v. America Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) ("The statute [*i.e.*, Section 1738] directs a federal court to refer to the preclusion law of the State in which judgment was rendered.  'It has long been established that § 1738 does not allow federal courts to employ

9

their own rules of *res judicata* in determining the effect of state judgments.  Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken.'"); Hillary v. Trans World Airlines, Inc., 123 F.3d 1041, 1043 (8th Cir. 1997) (". . . 'it is fundamental that the *res judicata* effect of the first forum's judgment is governed by the first forum's law, not by the law of the second forum.'").  As such, federal law directs this Court to look to Pennsylvania state law in determining the requirements and effects of the doctrine of *res judicata*.

### 2.  A final judgment

Courts, including Pennsylvania state courts, have included in the description of *res judicata* a requirement that the earlier case have resulted in a "final judgment on the merits." *See*, *e.g.*, Knouse v. W.C.A.B. (G.O.D. Inc.), 886 A.2d 329, 335 n.10 (Pa. Cmwlth. 2005) ("*res judicata* provides that, when a final judgment on the merits exists, a future suit between the parties on the same cause of action is precluded.").  However, a "final judgment on the merits" is not an inflexible requirement.  Bearoff v. Bearoff Brothers, Inc., 327 A.2d 72, 75 (Pa. 1974) ("While the general rule for either collateral estoppel or *res judicata* to apply is that a final and valid judgment must have been entered, . . . this rule is not without exception.") (citing Kannel v. Kennedy, 94 F.2d 487, 488 (3d Cir. 1937), which held that "[i]t is the general rule that the doctrine of *res judicata* does not apply in the absence of a final judgment.  There are exceptions, however, to this rule.").  Moreover, even where the requirement for "a valid final judgment on the merits" is applicable, what a "final judgment on the merits" means is very broad in Pennsylvania for purposes of applying *res judicata*.  General Accident Fire & Life Assurance Corp. v. Flamini, 445 A.2d 770, 772 (Pa. Super. 1982) ("Pennsylvania law takes a broad view on what constitutes a 'final judgment' for purposes of *res judicata*.").

In support of their motion to dismiss, the Corrections Defendants have provided this Court with documents from Plaintiff's Greene County case, including: the docket sheet; the complaint; preliminary objections filed by the defendants; the July 15, 2011, final order granting the defendants' preliminary objections and dismissing the case for Plaintiff's failure to state a claim upon which relief could be granted; and the Greene County court's statement pursuant to Pennsylvania Rule of Appellate Procedure 1925. *See* ECF Nos. 36-1 – 36-6.

Under Pennsylvania law, where the court sustains a demurrer and dismisses a complaint, such an order is final and appealable. Brown v. Kleinfelter, 406 A.2d 560, 561 (1979). Moreover, the dismissal of an action for failure to state a claim has been held to be a final judgment on the merits. Brown v. Conney, 442 A.2d 324, 326 (1982); Coggins v. Carpenter, 468 F. Supp. 270, 280 (E.D. Pa. 1979). As such, the Greene County court's order dated July 15, 2011, granting Defendants' preliminary objections and dismissing Plaintiff's case for failure to state a claim, constituted an adjudication on the merits and is given preclusive effect in this case for purposes of *res judicata*. *See* Reiff v. City of Philadelphia, 471 F. Supp. 1262, 1266 n.3 (E.D. Pa. 1969) (where the Common Pleas Court dismissed the plaintiff's state court action on preliminary objections in the nature of a demurrer, that dismissal for failure to state a claim constituted a final valid judgment on the merits which carried *res judicata* effect).

### 3. Analysis

The doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction, on the merits, is conclusive as to the rights of the parties and their privies, and as to them constitutes an absolute bar to a subsequent action involving the same cause of action. In re Weisbrod & Hess Corp., 129 F.2d 114, 116 (3d Cir. 1942).

As explained by the Pennsylvania Supreme Court:

> *Res judicata*, or claim preclusion, prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, **or could have been raised**, in the previous adjudication.  R/S Financial Corporation v. Kovalchick, 716 A.2d 1228, 1230 (Pa. 1998).  The doctrine of *res judicata* developed to shield parties from the burden of re-litigating a claim with the same parties, or a party in privity with an original litigant, and to protect the judiciary from the corresponding inefficiency and confusion that re-litigation of a claim would breed.  Id.

Wilkes v. Phoenix Home Life Mut. Ins. Co., 902 A.2d 366, 376 (Pa. 2006) (emphasis added).  In order for the doctrine of *res judicata* to apply under Pennsylvania law, the two actions must share the following four conditions: "(1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued."  Turner v. Crawford Square Apts. III, L.P., 449 F.3d 542, 548 (3d Cir. 2006) (citing Bearoff, 327 A.2d 72 (1974)).  While these four prongs are to be analyzed, the courts of Pennsylvania have cautioned against giving them a too literal interpretation.  *See*, *e.g.*, Radakovich v. Radakovich, 846 A.2d 709, 715 (Pa. Super. 2004) ("The purpose behind the doctrine, which bars the re-litigation of issues that either were raised or could have been raised in the prior proceedings, are to conserve limited judicial resources, establish certainty and respect for court judgments . . . .  In keeping with these purposes, the doctrine must be liberally construed and applied without technical restriction.").  In accord with the purpose of the doctrine, the Court considers the four prongs.

### a.  Identity of thing sued upon or for

The first prong, described as "identity of the thing sued upon" or "identity of subject matter,"[6] is met here as the "thing sued for" in both the Greene County lawsuit and the present federal lawsuit are the same; Defendants' alleged wrongful acts in connection with the falls

---

[6]    In re Estate of Tower, 343 A.2d 671, 674 (Pa. 1975) (describing the first prong as "identity of the thing or subject matter sued for").

Plaintiff experienced on February 18, 2009; January 25, 2010; April 4, 2010; and May 5, 2010. *See, e.g.*, Gregory v. Chehi, 843 F.2d 111, 116-17 (3d Cir. 1988) ("Isolating the alleged wrongful act is critical to the first requirement [of *res judicata*] – identity of subject matter.  In this case, a single event, the November 1, 1985 discharge, gave rise to both state and federal actions. Because that same occurrence underlies both suits, the first prerequisite of claim preclusion is met."); O'Brien v. Valley Forge Specialized Educational, No. 03-3984, 2004 U.S. Dist. LEXIS 20655, 2004 WL 2316425, at *8 (E.D. Pa. Oct. 13, 2004) ("When the 'same occurrence underlies both suits,' this requirement [of identity of the thing sued upon] is met."); Jett v. Beech Interplex, Inc., No. 02-9131, 2004 U.S. Dist. LEXIS 13352, 2004 WL 1588230, at *3 (E.D. Pa. July 15, 2004) ("The first factor for this Court to consider is the similarity of the thing sued upon in both Jett I and Jett II.  In this case, the operative facts and the subject matter of this action are identical to the prior State Court proceedings . . . .  Thus, this Court concludes that the first element of the *res judicata* doctrine is satisfied.") (citations omitted); RegScan, Inc. v. Brewer, No. 04-6043, 2006 U.S. Dist. LEXIS 6412, 2006 WL 401852, at *7 (E.D. Pa. Feb. 17, 2006) ("in comparing the 'thing sued upon' in the state and federal actions, the Court concludes that based on all of the above, the operative facts and the subject matter are closely aligned, and the first element of the *res judicata* doctrine is satisfied.").[7]  Here, the Defendants' alleged wrongful acts underlying both suits are identical.  Therefore, the first prong is satisfied.

### b.  Identity of cause of action

In explaining the identity of the cause of action, the Court of Appeals for the Third Circuit, applying *res judicata* to a prior Pennsylvania state court decision, as this Court is now,

---

[7]     All of the preceding federal cases cited in this section, addressing the "identity of issues," were construing the Pennsylvania law of *res judicata*.

held that "*res judicata* generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims."   Davis v. United States Steel Supply, 688 F.2d 166, 171 (3d Cir. 1982); *see also* Greenberg v. Potomac Health Sys., 869 F. Supp. 328, 331 (E.D. Pa. 1994) ("Whether a cause of action is the same depends on the 'essential similarity of the underlying events,' rather than on the specific legal theories invoked.'"); McArdle v. Tonetti, 627 A.2d 1219, 1222 (Pa. Super. Ct. 1993) ("As to the identity of cause[s] of action, rather than resting upon the specific legal theory invoked, *res judicata* generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims.").

Here, the underlying events giving rise to Plaintiff's various legal claims in this case are identical to those in his Greene County case.   Plaintiff's mere advancement of different legal theories, which he withheld in his Greene County case, does not create separate causes of action with respect to the Defendants he named in both cases because the new claims are based on the same set of facts.   *See* Turner, 449 F.3d at 550 (citing Balent v. City of Wilkes-Barre, 669 A.2d 309, 315 (Pa. 1995)).   Because Plaintiff could have raised these new claims in his Greene County case, application of *res judicata* bars the claims in this action.   Id. (citing Restatement (Second) of Judgments § 25, cmt. E (1982)); *see also* Smith v. Morgan, 75 F. App'x 505, 506 (6th Cir. 2003) ("Under claim preclusion, a final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of action, as to every matter actually litigated as well as every theory of recovery that could have been presented."); L-Tec Electronics Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85, 87-88 (2d Cir. 1999) (*per curiam*) ("The doctrine of *res judicata*, or claim preclusion, prevents a plaintiff from relitigating claims that were or could have been raised in a prior action against the same defendant where that action has reached a final judgment on the merits.").   Hence, this prong is satisfied.

### c.   Identity of parties and capacities

Plaintiff named the following Defendants in this action as defendants in his Greene County case:  Folino, Walker, Durco, King, McElroy, and Conklin.  Hence, these prongs are satisfied as to these Defendants.  However, the doctrine of *res judicata* is inapplicable as to Corrections Defendants Armstrong and Varner and Medical Defendants Dr. Parks and Dr. Jin because they were not named as defendants in Plaintiff's Greene County case and they do not share privity with any defendant who was so named.

### 4.  Conclusion

The four conditions are easily met in this case and all of Plaintiff's claims asserted against Defendants Folino, Walker, Durco, King, McElroy, and Conklin in the present federal action are precluded by the doctrine of *res judicata*.[8]  As such, the Corrections Defendants' motion to dismiss will be granted on this basis and Plaintiff's Amended Complaint will be dismissed with prejudice in its entirety against these individual Defendants.

## B.   Personal Involvement of Corrections Defendants Armstrong and Varner

The Corrections Defendants move for dismissal of Plaintiff's Amended Complaint against all Defendants based on their lack of personal involvement in any alleged wrongdoing resulting in alleged violations of federal law.  Because Plaintiff's claims against all Corrections Defendants, with the exception of Armstrong and Varner, are barred by *res judicata*, the Court will address this basis for dismissal only with respect to these two Defendants.

For liability under 42 U.S.C. § 1983, a defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."

---

[8]     The Court notes that collateral estoppel, also known as issue preclusion, may also bar a portion of the instant action with respect to Defendants Folino, Walker, Durco, King, McElroy, and Conklin.  The application of this doctrine, however, has been rendered moot in this case due to the fact that all of Plaintiff's asserted claims against these Defendants are barred by *res judicata*.

Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)).  Recently, the Third Circuit Court of Appeals specified certain instances whereby a supervisor could be liable in a section 1983 action.  In Argueta v. United States Immigration & Customs Enforcement, 643 F.3d 60 (3d Cir. 2011), the court stated:

> . . . "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also, e.g., Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010) ("Instead, Santiago's allegations appear to invoke a theory of liability under which 'a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.'") (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)) (footnote omitted)).  "It is also possible to establish section 1983 supervisory liability by showing a supervisor tolerated past or ongoing misbehavior." Baker v. Monroe Township, 50 F.3d 1186, 1191 n.3 (3d Cir. 1995) (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 724-25 (3d Cir. 1989)).  We further indicated that a supervisor may be liable under § 1983 if he or she implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct. See, e.g., Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001).

Argueta, 643 F.3d at 72.

Importantly for this case, inmates do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977); Speight v. Sims, 283 F. App'x 880, 881 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001), stating that "the existence of a prison grievance procedure confers no liberty interest on a prisoner.")  Moreover, personal knowledge of constitutional violations cannot be established solely as a result of addressing grievances.  See Dellarciprete, 845 F.2d at 1208.  Moreover, the denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement. See Simonton v. Tennis, 437 F. App'x 60, 62 (3d

Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); Manns v. Bledsoe, No. 10-1564, 2011 U.S. Dist. LEXIS 102268, 2011 WL 4048781, at *4 (M.D. Pa. Sept. 12, 2011); Mincy v. DeParlos, No. 08-0507, 2011 U.S. Dist. LEXIS 31168, 2011 WL 1120295, at *7 (M.D. Pa. Mar. 24, 2011); Wilkerson v. Schafer, No. 09-2539, 2011 U.S. Dist. LEXIS 25916, 2011 WL 900994, at *7 (M.D. Pa. Mar. 14, 2011) (allegations that defendants "should be held liable for due process violations because they should have become aware of them through their review of his misconduct appeals is insufficient to establish their personal involvement in the underlying unconstitutional conduct"); Logan v. Lockett, No. 07-1759, 2009 U.S. Dist. LEXIS 24328, 2009 WL 799749, at *8 (W.D. Pa. Mar. 25, 2009); Croom v. Wagner, No. 06-1431, 2006 U.S. Dist. LEXIS 64915, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pa. Dept. of Corr., No. 06-1444, 2006 U.S. Dist. LEXIS 51582, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).

Defendants contend that Plaintiff fails to establish the requisite level personal involvement of Defendants Armstrong and Varner for liability under § 1983 because the Amended Complaint includes no allegations of involvement outside of the grievance process. The Court agrees.  Because Plaintiff's Amended Complaint alleges only involvement in the

grievance process with respect to these two Defendants, and this involvement does not establish the requisite personal involvement for liability under § 1983, Plaintiff's Amended Complaint will be dismissed with prejudice in its entirety against Defendants Armstrong and Varner.[9]

## C.    Statute of Limitations

The Medical Defendants move to dismiss Plaintiff's federal and state law claims set forth in Fact 1 asserting that they are barred by the applicable statute of limitations.  The Court agrees that they are so barred.

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . ." but it does not provide for any applicable statute of limitations.  42 U.S.C. § 1983.  Title 28 U.S.C. § 1652 provides that "[t]he laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as the rules of decision in civil actions in the courts of the United States, in cases where they apply," and 42 U.S.C. § 1988 further provides that

> the protection of all persons in the United States in their civil rights…shall be exercised and enforced in conformity with the laws of the United States…but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil…cause is held…shall be extended to govern the said courts in the trial and disposition of the cause….

42 U.S.C. § 1988(a).

---

[9]        The same is also true for Defendant Durco as Plaintiff does not allege any involvement on his part apart from his participation in the grievance process.  As previously noted, Plaintiff's claims against Defendant Durco are barred pursuant to *res judicata*.  However, as an alternative basis for dismissal, Plaintiff's Amended Complaint will be dismissed with prejudice in its entirety against Defendant Durco for this reason.

In fact, the Supreme Court stated that, "in 42 U.S.C. § 1988 Congress had plainly instructed the federal courts to refer to state law when federal law provides no rule of decision for actions brought under § 1983 . . . ." Chardon v. Soto, 462 U.S. 650, 657 (1983) (citing Bd. of Regents of the Univ. of the State of N.Y. v. Tomanio, 446 U.S. 478, 484 (1980)).  Thus, in "civil rights actions under 42 U.S.C. §§ 1983, 1985, federal courts must ascertain the underlying cause of action under state law and apply the limitation period which the state would apply if the action had been brought in state court" and the "controlling statute of limitations in an action pursuant to 42 U.S.C. § 1983 is the most analogous one provided by state law." Jennings v. Shuman, 567 F.2d 1213, 1216 (3d Cir. 1977) (citing Polite v. Diehl, 507 F.2d 119, 122 (3d Cir. 1974)); Eubanks v. Clarke, 434 F. Supp. 1022, 1030 (E.D. Pa. 1977).  In actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury.  Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 559 (3d Cir. 1998).

Additionally, neither Title II of the Americans with Disabilities Act ("ADA") nor Section 504 of the Rehabilitation Act ("RA") includes an express statute of limitations.  However, the Third Circuit has held that the limitations period applicable to claims under Title II of the ADA and Section 504 of the RA is the statute of limitations for personal injury actions in the state in which the trial court sits.  Disabled in Action v. SEPTA, 539 F.3d 199, 208 (3d Cir. 2008).

Pursuant to the above, the applicable statute of limitations for Plaintiff's claims under 42 U.S.C. § 1983, Title II of the ADA, and Section 504 of the RA is two years.  See 42 Pa. C.S. § 5524(2).  Additionally, Plaintiff claims for medical malpractice under Pennsylvania state law and for claims brought directly under the Pennsylvania Constitution also carry a two year statute of limitations.  See 42 Pa. C.S. § 5524(7) (medical malpractice); Clark v. City of Coatesville, No.

04-4039, 2007 U.S. Dist. LEXIS 71244, 2007 WL 2791427, at *2, n.2 (E.D. Pa. Sept. 25, 2007) (Pennsylvania Constitution).

Plaintiff initiated this case on January 23, 2012; therefore, any claim premised on alleged unlawful conduct that occurred prior to January 23, 2010, is barred by the applicable statute of limitations.  This includes all of Plaintiff's claims originating out of "Fact 1" in his Amended Complaint pertaining to the incident that occurred on February 18, 2009, including Plaintiff's claim as to Medical Defendant Dr. Parks.  Consequently, these claims will be dismissed with prejudice.[10]

## D.   Exhaustion of Administrative Remedies

The Medical Defendants move for dismissal of Plaintiff's claims for Plaintiff's failure to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act.

Through the PLRA, Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted.  Specifically, the act provides, in pertinent part, as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal

---

[10]     Plaintiff argues that his claims against Dr. Parks for declaratory and injunctive relief arising out of the February 18, 2009, are not barred by the two year statute of limitations.  However, Plaintiff's claims for injunctive and declaratory relief have been rendered moot because he is no longer incarcerated at SCI-Greene.  *See, e.g.*, Bronson v. Overton, No. 08-52E, 2010 U.S. Dist. LEXIS 60003, 2010 WL 2512345, at *1 n.1 (E.D. Pa. May 27, 2010); Fortes v. Harding, 19 F. Supp. 2d 323, 326 (M.D. Pa. 1998) ("Fortes' transfer to another institution moots any claim for injunctive and declaratory relief").  Additionally, declaratory relief cases address present/future harms, not past harm.  "To satisfy the standing and 'case and controversy' requirements of Article III, a party seeking a declaratory judgment 'must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'"  Martin v. Keitel, 205 F. App'x 925, 928 (3d Cir. 2006) (affirming dismissal of declaratory judgment action seeking "a declaration that defendants violated . . . rights in the past" as no longer justiciable).  Accordingly, Plaintiff's claims for injunctive and declaratory relief are dismissed with prejudice.

law, by a prisoner confined in any jail, prison, or other correctional facility until
such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion is required under this provision regardless of the type of relief

sought and the type of relief available through administrative procedures. *See* Booth v. Churner,

532 U.S. 731, 741 (2001). In addition, the exhaustion requirement applies to all claims relating

to prison life which do not implicate the duration of the prisoner's sentence, including those that

involve general circumstances as well as particular episodes. *See* Porter v. Nussle, 524 U.S. 516,

532 (2002). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all

the available remedies prior to filing the action. *See* Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir.

2000) (by using language "no action shall be brought," Congress has "clearly required

exhaustion").

The PLRA also mandates that inmates "properly" exhaust administrative remedies before

filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion

demands compliance with an agency's deadlines and other critical procedural rules because no

adjunctive system can function effectively without imposing some orderly structure on the

course of its proceedings." Id. at 90-91. Such requirements "eliminate unwarranted federal-

court interference with the administration of prisons, and thus seek[] to 'affor[d] corrections

officials time and opportunity to address complaints internally before allowing the initiation of a

federal case.'" Id. at 93 (quoting Porter, 534 U.S. at 525). Importantly, the exhaustion

requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . .

appeal." Id. at 83; *see also* Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a

procedural default analysis to reach the same conclusion). Courts have concluded that inmates

who fail to fully, or timely, complete the prison grievance process are barred from subsequently

litigating claims in federal courts.  *See*, *e.g.*, <u>Booth v. Churner</u>, 206 F.3d 289 (3d Cir. 2000);

<u>Bolla v. Strickland</u>, 304 F. App'x 22 (3d Cir. 2008); <u>Jetter v. Beard</u>, 183 F. App'x 178 (3d Cir.

2006).

      This broad rule favoring full exhaustion admits of one, narrowly defined exception.  If

the actions of prison officials directly caused the inmate's procedural default on a grievance, the

inmate will not be held to strict compliance with this exhaustion requirement.  *See* <u>Camp v.</u>

<u>Brennan</u>, 219 F.3d 279 (3d Cir. 2000) (Section 1997e(a) only requires that prisoners exhaust

such administrative remedies "as are available").   However, case law recognizes a clear

"reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute

requires." <u>Davis v. Warman</u>, 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's failure to

exhaust will only be excused "under certain limited circumstances," <u>Harris v. Armstrong</u>, 149 F.

App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by

showing "he was misled or that there was some extraordinary reason he was prevented from

complying with the statutory mandate." <u>Davis</u>, 49 F. App'x at 368; *see also* <u>Brown v. Croak</u>,

312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled

to rely on instruction by prison officials to wait for outcome of internal security investigation

before filing grievance); <u>Camp</u>, 219 F.3d at 281 (exhaustion requirement met where Office of

Professional Responsibility fully examined merits of excessive force claim and correctional

officers impeded filing of grievance).

      In the absence of competent proof that an inmate was misled by corrections officials, or

some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are

frequently rebuffed by the courts.  Thus, an inmate cannot excuse a failure to timely comply with

these grievance procedures by simply claiming that his efforts constituted "substantial

compliance" with this statutory exhaustion requirement.  Harris, 149 F. App'x at 59.  Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him.  Davis, 49 F. App'x at 368.  Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust.  Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003).  Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed.  Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

The Medical Defendants assert that there is nothing in Plaintiff's Amended Complaint or his supporting exhibits which demonstrate that grievance procedures were pursued with respect to Dr. Parks and/or Dr. Jin, except for Plaintiff's grievance concerning the time-barred incident that occurred on February 18, 2009.  As an initial matter, the only allegation contained in Plaintiff's Amended Complaint with respect to Dr. Parks is that Dr. Parks released Plaintiff back to his housing unit on April 5, 2010, without conducting an examination of his knee after his wheelchair accident the previous day.[11]  (ECF No. 15 at ¶ 57.)  With respect to Dr. Jin, Plaintiff's only allegation is that Dr. Jin "approved of [P]laintiff being stripped of his walking cane; wheelchair; and plastic chair," and presumably the use of such items would have prevented Plaintiff's fall on May 5, 2010.  (ECF No. 15 at ¶ 73.)  In support of his Amended Complaint, Plaintiff attached all grievances and their respective appeals, including those he filed with respect

---

[11]     The Court recognizes Plaintiff's allegations with respect to Dr. Parks in connection with his claims asserted in "Fact 1" pertaining to the fall that occurred on February 18, 2009.  Those claims, however, are time-barred.

to the incidents at issue that occurred on April 4, 2010 and May 5, 2010.  *See* ECF Nos. 15-1 –

15-51.  The Court may consider these documents in deciding the instant motion to dismiss

because they are exhibits which Plaintiff attached to his Amended Complaint.  *See*, *supra*, FN3.

Upon review, the Court finds that Plaintiff has not exhausted his administrative remedies

with respect to Dr. Parks.  Specifically, Plaintiff failed to grieve his claim that Dr. Parks did not

provide him with adequate medical care in connection with his wheelchair accident.  Instead,

Plaintiff simply complained that he was not seen by the nurse upon her collection of the sick call

slips on April 4, 2010, as he was told he would be.  *See* ECF No. 15-24 at 1.  This was not

enough to put Dr. Parks on notice that Plaintiff sought to hold him liable for any alleged

misconduct on his part.  *See* Spruill, 372 F.3d at 234 ("The purpose of the regulation here is to

put the prison officials on notice of the persons claimed to be guilty of wrongdoing.")  As such,

the Court concludes that Plaintiff's claims against Dr. Parks are barred for his failure to exhaust

his administrative remedies.[12]

The exhaustion issue with respect to Dr. Jin presents a more difficult situation.  While

Plaintiff did, in fact, complain that he did not have use of the cane, wheelchair, and plastic chair

that had been authorized by medical, he did not, however, specifically name Dr. Jin as the

individual who was responsible for denying him use of those items.  (ECF No. 15-32.)  In Spruill

v. Gillis, 372 F.3d 218 (3d Cir. 2004), the Third Circuit Court of Appeals was confronted with a

---

[12]     The Court notes the rarity of success on a 12(b)(6) motion based on an inmate's failure to exhaust his administrative remedies.  However, this is not a situation where Defendants assert that Plaintiff has failed to *allege* exhaustion in his Amended Complaint, perhaps recognizing that it is an affirmative defense and that plaintiffs do not have to plead or demonstrate exhaustion in their complaints.  *See* Jones v. Bock, 549 U.S. 199, 216 (2007); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).  Rather, Plaintiff has provided the Court with all of his grievances he filed with respect to the incidents alleged in his Amended Complaint.  While Plaintiff does not concede that he has failed to exhaust his administrative remedies with respect to his claims against Dr. Parks, he does not dispute such fact, and only specifically argues that he has exhausted with respect to Dr. Jin.  *See* ECF No. 38.  The Court finds that this is one of the rare situations where it is appropriate to grant a motion to dismiss for a plaintiff's failure to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act.

situation where, although the Pennsylvania prisoner had filed a grievance, the grievance failed to

mention one of the people whom the prisoner subsequently named as a defendant in a civil rights

action based on the same events as the grievance.   The court held that because the grievance did

not mention the particular individual by the name of Brown, the prisoner-plaintiff had

procedurally defaulted his claims against Brown.   The holding of <u>Spruill</u>, in this respect, is

precisely on point:

> [t]he passage quoted above regarding the contents of the grievance is also the only
> section of the Grievance System Policy requiring that the grievance identify
> specific persons.  On this matter, the text is mandatory, or nearly so:  "The inmate
> shall include a statement of the facts relevant to the claim.... The inmate should
> identify any persons who may have information that could be helpful in resolving
> the grievance.  The inmate should also include information on attempts to resolve
> the matter informally."  DC-ADM 804, Part VI.A.1.d.  To the extent that Brown's
> identity is a "fact[ ] relevant to the claim"-and it is-it was mandatory for Spruill to
> include it.  To the extent that Brown was a "person[ ] who may have information"
> or someone with whom Spruill made "attempts to resolve the matter informally"-
> and he was-Spruill was required to identify Brown if practicable.  Spruill did not,
> and has offered no explanation for his failure to do so.  Any grievance against
> Brown   would   now   be   time-barred.  *See*   DC-ADM 804, Part   VI.A.1.e
> ("Grievances must be submitted by the inmate ... within fifteen (15) working days
> after the events on which the claims are based.").  Thus Spruill has procedurally
> defaulted a claim against Brown by failing to identify him.

<u>Id</u>. at 234.  However, the court found that the prison's grievance process excused the prisoner-

plaintiff's procedural default because the grievance officer's "Initial Review Response"

identified Brown by name.   <u>Id</u>.  This is precisely the scenario here with respect to Dr. Jin.

In response to Plaintiff's grievance wherein he complained about not having use of his

wheelchair, cane, or plastic chair, the grievance officer stated that Plaintiff was not completely

handicapped, that he had only been issued the wheelchair and cane for ease of movement, not

because he could not walk, and that Dr. Jin cancelled the order after Plaintiff abused the aid by

assaulting another inmate with his cane.  (ECF No. 15-34.)   As such, the grievance officer

identified Dr. Jin as the individual who was responsible for, as Plaintiff put it, "stripping" him of his cane.  Much like the <u>Spruill</u> court found, the grievance officer's recognition that Dr. Jin had been involved in the events of which Plaintiff complained excused any procedural default in Plaintiff's initial grievance.  Consequently, the Court finds that Plaintiff has exhausted his claims with respect to Dr. Jin.  However, as discussed below, Plaintiff has failed to state a claim of deliberate indifference against either Dr. Parks or Dr. Jin, so his claims will nevertheless be dismissed.

**E.    Deliberate Indifference**

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments."  U.S. CONST. amend. VIII.  This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." <u>Famer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)).

Plaintiff's Amended Complaint purports to state a claim for deliberate indifference to serious medical needs in violation of the Eighth and Fourteenth Amendments.  To state an Eighth Amendment violation in the context of medical treatment, an inmate must demonstrate two elements: (1) he was suffering from a "serious medical need," and (2) prison officials were deliberately indifferent to the serious medical need.  <u>Gamble v. Estelle</u>, 439 U.S. 897 (1978). The first showing requires the court to objectively determine whether the medical need was "sufficiently serious."  A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention.  <u>Monmouth County Correctional Institutional</u> <u>Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).  The second prong requires the court to subjectively determine whether the officials acted with a sufficiently culpable state of mind.  Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury.  <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993).

Even assuming Plaintiff had a serious medical need, Plaintiff's allegations with respect to both Dr. Parks and Dr. Jin fall short of establishing deliberate indifference – *i.e.*, that they acted with a sufficiently culpable state of mind.  Rather, they echo Plaintiff's dissatisfaction and/or disagreement with the care he received by Dr. Parks and disagreement over Dr. Jin's decision to cancel his order for his cane.  Specifically, Plaintiff expressly admits that he was held overnight for medical observation after his wheelchair accident on April 4, 2010.  He simply disagrees with Dr. Parks' professional medical decision to discharge him without any medical treatment.  He also disagrees with Dr. Jin's medical assessment regarding Plaintiff's need for his cane and/or mobility aids.  This fails to state a claim for an Eighth Amendment violation.  *See* <u>White v.</u> <u>Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990).  The deliberate indifference standard affords considerable deference to prison doctors in the diagnosis and treatment of medical problems on inmates.  <u>Inmates of Allegheny Cnty. Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979).  Courts will not second-guess the propriety or adequacy of a particular course of treatment if it is a question of sound professional judgment.  <u>Id</u>.  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, that would amount to medical malpractice and not an Eighth Amendment violation.  *See* <u>White</u>, 897 F.2d at 110; *see*

27

*also* Estelle, 429 U.S. at 105-06.  Accordingly, Plaintiff has failed to state a claim for deliberate indifference against Dr. Parks and Dr. Jin, and the Court finds that any attempt to amend on his part would be futile.  As such, the Medical Defendants motion will be granted on this basis.

**F.     The Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA")**

The Medical Defendants move for dismissal of Plaintiff's claims based upon Title II of the ADA, as amended 42 U.S.C. § 12131, *et seq*.  Title II of the ADA prohibits discrimination by public entities, such as state prisons.  *See* Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210 (1998) (Title II of the ADA applies to state prisons); United States v. Georgia, 546 U.S. 151, 154 (2006) (Title II of the ADA authorizes suits by inmates against public entities such as state prisons).  Specifically, Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded form participation in or be denied the benefits of the services or activities of a public entity or be subjected to discrimination by such entity."  42 U.S.C. § 12132.  However, individual defendants, sued in their individual capacities, are not liable under Title II of the ADA because they are not "public entities" within the meaning of the ADA.  Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002).  The same holds true for individual defendants under Section 504 of the RA, 29 U.S.C. § 794, which states: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  Id. at 190.  Accordingly, Plaintiff is unable to state a claim against the Medical Defendants in their individual capacities under either act.

Plaintiff purports to bring claims against Dr. Parks and Dr. Jin in their official capacities for violations of these acts.  "[A] suit against a state official in his or her official capacity is not a

suit against the official but rather is a suit against the official's office. As such, it is no different form a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (internal citation omitted). The Eleventh Amendment provides states with immunity not only from suits brought by citizens of other states, but also from suits brought by their own citizens. Hans v. Louisiana, 134 U.S. 1, 12-14 (1890). But a state's Eleventh Amendment protection from federal suits is not absolute. Congress may authorize such a suit under its power to enforce the Fourteenth Amendment, Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999), thereby abrogating a state's sovereign immunity but only "when it both unequivocally intends to do so and 'acts pursuant to a valid grant of constitutional authority'" Bd. of Trs. Of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001) (quoting Kimel v. Bd. of Regents, 528 U.S. 62, 73 (2000). A state may also waive its sovereign immunity by consenting to suit. Coll. Sav. Bank, 527 U.S. at 670 (citing Clark v. Barnard, 108 U.S. 436 (1883)); Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985). Additionally, a person seeking purely prospective relief against state officials for ongoing violations of federal law may sue under the "legal fiction" of Ex parte Young, 209 U.S. 123, 159-60 (1908), despite the text of the Eleventh Amendment. Alden v. Maine, 527 U.S. 706, 757 (1999).

The Third Circuit has held that "if a state accepts federal funds for a specific department or agency, it voluntarily waives sovereign immunity for Rehabilitation Act claims against the department or agency – but only against that department or agency." Koslow v. Pennsylvania, 302 F.3d 161, 171 (3d Cir. 2002). With respect to the ADA, the Supreme Court has held that Title II of the ADA validly abrogates sovereign immunity as to state conduct that actually violates the Constitution, United States v. Georgia, 546 U.S. 151, 159 (2006), but in order to determine whether a plaintiff may sue a State for damages under Title II, courts must "(1)

identify which aspects of the State's alleged conduct violated Title II; (2) identify to what extent such conduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, determine whether Congress' purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." Bowers v. NCAA, 475 F.3d 524, 553 (3d Cir. 2007).

Pursuant to this standard, Plaintiff must initially state a valid claim under Title II of the ADA, and to do this he must show that (1) he is a qualified individual (2) with a disability, and (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity, (4) by reason of his disability.  42 U.S.C. § 12132; Bowers, 475 F.3d at 553 n.32; *see also* Wagner v. Fair Acres Geriatric Center, 49 F.3d 1002, 1009 (3d Cir. 1995).  The RA is similar to the ADA in all but one critical respect; it contains the additional requirement that the plaintiff show that the program or activity from which he is excluded receives federal financial assistance.  *See* Saxe v. State Coil-Area Sch. Dist., 240 F.3d 200, 204 (3d Cir. 2001).  As such, the Court's findings with respect to the ADA are equally applicable to Plaintiff's claims brought under the RA.  *See* Pennsylvania Protection and Advocacy, Inc. v. Pennsylvania Dept. of Public Welfare, 402 F.3d 374, 379 n.3 (3d Cir. 2005) (Noting that because of the similarities between the statues, the Court of Appeals for the Third Circuit has found that they are appropriately considered in tandem).

Notwithstanding that Plaintiff has not alleged that he is a qualified individual with a disability under the ADA or RA, he does not allege that he was excluded from any service, program, or activity on the basis of his disability.  Rather, with respect to Dr. Jin, Plaintiff appears to claim that he was subjected to discrimination because he was denied reasonable

accommodations for his disabilities.[13]   However, Plaintiff admits that he was provided

accommodations, including a handicap accessible cell, wheelchair, cane, and plastic chair, but

alleges that he was later denied use of these accommodations by Dr. Jin.  The record is clear that

Dr. Jin did this after Plaintiff allegedly abused the use of his cane and determined that use of his

handicap cell and cane were no longer medically necessary.  *See* ECF No. 15-34; No. 15-38.  In

actuality, Plaintiff simply disputes the medical judgment of Dr. Jin, which fails to state a claim

under the ADA or the RA.  *See*, *e.g.*, Iseley v. Beard, 200 F. App'x 137, 142 (3d Cir. 2006);

Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) ("[P]urely medical

decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act.");

Burger v. Bloomberg, 418 F.3d 882 (8th Cir. 2005) (medical treatment decisions are not a basis

for ADA claims); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (holding that "the [ADA]

would not be violated by a prison's simply failing to attend to the medical needs of its disabled

prisoners . . . [t]he ADA does not create a remedy for medical malpractice."); *see also* Lesley v.

Chie, 250 F.3d 47, 55 (1st Cir. 2001) ("[A] plaintiff's showing of medical unreasonableness must

be framed within some larger theory of disability discrimination."); Thomas v. Pa. Dep't of

Corr., 615 F. Supp. 2d 411, 429 (W.D. Pa. 2009) (plaintiff's requests for a handicap cell that

were denied based on a medical determination that they were not warranted did not support

discriminatory treatment in violation of Title II of the ADA).  The same is true with respect to

Plaintiff's claims against Dr. Parks.  Therefore, the Court finds that Plaintiff has failed to state a

---

[13]        Under Title II, "the failure of a public entity to provide disabled persons with reasonable modifications
constitutes discrimination within the meaning of the act."  Muhammad v. Dept. of Corr., 645 F. Supp. 2d 299, 313
(D. N.J. 2008); 28 C.F.R. § 35.130(b)(7).  Under the ADA, "a determination of whether a particular modification is
'reasonable' involves a fact-specific, case-by-case inquiry."  Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir.
1995).  In the prison setting, "the type of accommodation that will be enough to satisfy the [ADA]'s reasonableness
requirement must be judged in light of the overall institutional requirements.  Security concerns, safety concerns,
and administrative exigencies would all be important considerations to take into account."  Love v. Westville Corr.
Ctr., 103 F.3d 58, 561 (7th Cir. 1996) (internal citation omitted).

claim against either Medical Defendant for a violation of Title II of the ADA or Section 504 of the RA.

**G.     Plaintiff's State Law Claims**

Plaintiff also purports to bring claims under Article I of the Pennsylvania Constitution and for medical malpractice under Pennsylvania state law.  Federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts.  *See* United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); see also Aldinger v. Howard, 427 U.S. 1, 9 (1976).  Supplemental jurisdiction may be declined, however, when the court has dismissed all claims over which it has original jurisdiction.  *See* 28 U.S.C. § 1367(c)(3).  In light of this Court's determination that Defendants' motions to dismiss will be granted and that Plaintiff's federal claims will be dismissed with prejudice as to each Defendant, the Court declines to exercise jurisdiction over Plaintiff's state law claims.  An appropriate Order follows.

**AND NOW**, this 14th day of December, 2012;

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed by Defendants Dr. Jin and Dr. Parks (ECF No. 31) is **GRANTED** on the grounds addressed herein.

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Defendants Armstrong, Conklin, Durco, Folino, King, McElroy, Varner, and Walker (ECF No. 35) is **GRANTED** on the grounds addressed herein.

**IT IS FURTHER ORDERED** that the Clerk is directed to mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc:  **Anthony L. Richardson**
     FK-6920
     SCI Fayette
     PO Box 9999
     Labelle, PA 15450-0999
     *Via U.S. Postal Mail*

     Counsel of Record
     *Via ECF Electronic Mail*